FILED
2016 Sep-14  AM 09:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| ANTHONY PIAZZA, as personal | ) | |
| representative of the estate of | ) | |
| Ricky DeAngelo Hinkle, deceased | ) | |
| | ) | |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | CASE NO. |

### ***JURY TRIAL REQUESTED***

JEFFERSON COUNTY, ALABAMA, an Alabama county, individually
MIKE HALE, individually
RON EDDINGS, individually
CHRISTOPHER COTTEN, individually
HABIMANA DUKUZUMUREMYI, individually
ROY BRISTOW, individually
STEVE COCKRELL, individually
JACOB REACH, individually
ADVANCED CORRECTIVE HEALTHCARE, INC., a foreign corporation
doing business in Alabama, individually
ACH PHYSICIAN individually
ACH ADMINISTRATOR, individually
JILL MORGAN, individually
J. MOORE, individually,
T. COLE, individually
L. A. Lee, individually

    Defendants.

## Complaint

1.    This is a civil action brought by plaintiff, whose decedent was denied

certain constitutional rights by defendants while incarcerated in the

Birmingham Jefferson County jail facilities operated by defendant Hale .

Specifically, defendants were deliberately indifferent to plaintiff's serious

medical needs in violation of plaintiff's rights as a pretrial detainee under the

Fourteenth Amendment to the United States Constitution. Certain defendants

also violated Alabama law.

### Jurisdiction and Venue

2.     This action arises under the Fourteenth Amendment to the United

States Constitution and 42 U.S.C. § 1983 ("Section 1983"); Title II of the

Americans with Disabilities Act, 42 U.S.C. § 12132 (the "ADA"); and the

Rehabilitation Act of 1973, 29 U.S.C. § 794 ("RA"), and state law. The

Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331 and

1343(a)(3).

3.     This judicial district is an appropriate venue under 28 U.S.C. §

1391(b)(2) because a substantial part of the events giving rise to the suit

happened in this judicial district.

### Parties

4.     Plaintiff Anthony Piazza is the duly appointed personal representative

of the estate of Ricky DeAngelo Hinkle, Deceased, in Case No. 224783,

Probate Court of Jefferson County, Alabama.

5.      Defendant Jefferson County, Alabama is an Alabama County. It is responsible for funding the county jails in Jefferson County, including funding for medical care at the jails.

6.      Defendant Mike Hale was the Jefferson County sheriff at all relevant times. As the sheriff, among other things, he is responsible for management of Jefferson County's two jail facilities. Defendant Hale has a statutory duty under Alabama law to attend to the medical needs of inmates in Jefferson County's custody. He is sued in his individual capacity only.

7.      Defendant Ron Eddings was the Jefferson County captain at all relevant times. As the captain, among other things, he is responsible for management of Jefferson County's jail facilities. Defendant Eddings has a statutory duty under Alabama law to attend to the medical needs of inmates in Jefferson County's custody. He is sued in his individual capacity only.

8.      Defendant Christopher Cotten was employed by Hale as a detention officer at Jefferson County's Birmingham jail facility at all relevant times. He is sued in his individual capacity only.

9.      Defendant Habimana Dukuzumuremyi was employed by Hale as a detention officer at Jefferson County's Birmingham jail facility at all relevant times. He is sued in his individual capacity only.

10.     Defendant Roy Bristow was the Jefferson County deputy  at all relevant times. As the deputy, among other things, he is responsible for securing the crime scene, and preserving and maintaining all evidence in related to the crime scene at the jail involving Plaintiff's decedent. He is sued in his individual capacity only.

11.     Defendant Steve Cockrell was the Jefferson County evidence technician at all relevant times. As the evidence technician, among other things, he is responsible for preserving and maintaining all evidence in his custody related to the crime scene at the jail involving Plaintiff's decedent. He is sued in his individual capacity only.

12.     Defendant Jacob Leach was the Jefferson County lieutenant at all relevant times. As the lieutenant, among other things, he is responsible for for preserving and maintaining all evidence in his custody related to the crime scene at the jail involving Plaintiff's decedent. He is sued in his individual capacity only.

13.     Defendant Advanced Corrective Healthcare, Inc. is a private for-profit corporation that is under a contractual obligation to provide medical care for detainees/inmates in Jefferson County's jail facilities.

14.     Defendant ACH Physician was contracted by Advanced Correctional Healthcare to provide physician medical services at Jefferson's County's jail facilities and to act as the medical director at all relevant times.

15.     Defendant  ACH Administrator, is a nurse who was employed by Advanced Correctional Healthcare to provide nursing medical services and to serve as the Medical Team Administrator for inmates at Jefferson County's jail facilities at all relevant times.

16.      Defendants Jill Morgan, T. Cole, L. A. Lee, and J. Moore are a nurses who were employed by Advanced Correctional Healthcare to provide nursing medical services for inmates at Jefferson County's jail facilities at all relevant times.

## Facts

17.     Plaintiff incorporates all preceding paragraphs as if fully set out herein.

At the time Hinkle entered the county jail on September 8, 2013, Plaintiff's decedent, Ricky DeAngelo Hinkle was a 47 y.o. African-American man who suffered depression, alcoholism gout, and heart disease.

18.     During a prior admission on the July 8, 2014 the medical staff verified that Hinkle was taking 50 mg of Amitripline and the last prescription filled at CVS in Midfield was on June 25, 2014.

19.     On July 10, 2014 the jail certified nurse practitioner J. Moore ordered Amitripline po ghs for Hinkle's depression.

20.     Hinkle was arrested again on 9/8/14 by the U.S. Marshall's office and was found with an empty vodka bottle lying next to him and was noted to be slow in understanding and responding to the officers commands. The U.S. Marshalls did not use a taser on Hinkle.

21.     Upon his arrest on 9/8/14 Hinkle was admitted to the Jefferson County Bessemer jail, the medical staff noted an "alcohol habit" with an intake of 1 to 2 glasses per day on the medical screening form which was not signed by Nurse T. Cole in Jefferson County Bessemer jail until 9/18/14 .

21.     The Medication Verification signed by Nurse Cole in Jefferson County Bessemer jail on 9/8/14 did not verify Amitripline.

22.     The Physician's Telephone Orders form from Jefferson County Bessemer jail dated 9/8/14 failed to include any reference to antidepressant drug Amitripline.

23.     Hinkle was transferred from the Jefferson County Bessemer jail to the Birmingham jail on September 9, 2014, but the Intake Medical Screening and History and accompanying medical forms from Bessemer did not follow Hinkle to the Jefferson County Birmingham jail.

24.     Another Intake Medical Screening and History from the Jefferson County Birmingham jail dated 9/9/14 signed by L. A. Lee, RN and phys J. Moore, which does not list alcohol as a "habit" and only lists HPN or hypertension for "chronic clinic" and fails to list depression or alcoholism and the Physician's Telephone Orders only includes taking Hinkle's blood pressure for three days, and states nothing about his alcohol withdrawal or depression.

25.     The Medication Verification dated 9/9/14 includes Amitripline and was signed by certified nurse practitioner J. Moore and by nurse Morgan on 9/9/14. This verified that Hinkle was taking 40 mg of Amitripline and the last prescription filled according to this verification form was on 4/30/14, but the medication was not approved for refill by the certified nurse practitioner, J. Moore

26.     The Physician's Telephone Orders dated 9/9/14 failed to include any reference to antidepressant drug Amitripline and was signed by nurse L.A.Lee, and certified nurse practitioner J. Moore,

27.     The Medical Problem List form for Hinkle's 9/9/14 jail admission failed to list any of Hinkle's chronic medical problems and was unsigned.

28.     From the time he was incarcerated Defendants Jefferson County, Hale, and Advanced Corrective Healthcare, Moore, and Morgan failed to

monitor Hinkle's withdrawal from alcohol, and deprived Hinkle of his anti-depressant medication.

29.    On or about September 13, 2013 Hinkle went into alcohol withdrawal and defendants Cotten and Dukuzumuremyi noticed that Hinkle began exhibiting delusional, threatening, suicidal behavior, and talking nonsense.

30.    There was no jail or medical protocols in place at the time of Hinkle's exhibiting delusional, threatening, and suicidal behavior to treat Hinkle's serious medical needs.  Alternatively, if said jail or medical protocols were in place, they were not followed by defendants Cotten and Dukuzumureryi, who deployed their taser against Hinkle at approximately 11:23 AM.

31.    Cotten knew from his dealings with Hinkle that none of Hinkle's sentences made sense.

32.    Upon being tased, Hinkle fell to the floor on his right side and was ultimately tased again until he became unresponsive.

33.    Defendant Morgan was called to remove the taser prongs from Hinkle and upon arrival at 11:26 noticed Hinkle's eyes rolled back.

34.    CPR was initiated and other nursing staff were called.

35.    Hinkle was reportedly hooked up to the O2 Sat Monitor but no pulse or air flow was notated by the monitor.

36.     There was also a portable defibrillator or AED present but Hinkle could not be treated with it because it had no pads.

37.     Paramedics were not called until 10:38 AM and arrived at 10:48 but could not revive Hinkle.

38.     Hinkle was taken by paramedics to UAB emergency room where he was pronounced dead.

39.     Hinkle died after exhibiting delusional, withdrawal and suicidal behavior as a proximate result of the deliberate indifference to his mental and medical Defendants Cotten and Dukuzumureyi.

40.     During the morning of September 13, Defendants Cotten and Dukuzumureyi became aware of Hinkle's serious medical needs and saw his obvious need for emergency medical care.

41.     Rather than call emergency personnel or have Hinkle taken to the hospital, Cotten and Dukuzumureyi deployed their tasers on Hinkle and Hinkle was tased until he lay motionless and with his eyes rolled back.

42.     Defendant Advanced Correctional Healthcare (ACH) was responsible for providing and maintaining in good working order, emergency equipment such as the portable defibrilater or AED but he AED did not have pads and could not used on Hinkle.

43.    All defendants were aware of the importance of a portable defibrelator or AED in life and death situations such as Hinkle's, but were deliberately indifferent to having a functional and working defibrelator or AED present during life or death emergencies such as Hinkle, and ultimately said indifference led to Hinkle's death.

44.    Hinkle's condition was such that even a person with no medical training would realize the importance of having a functioning AED on site if an inmate such as Hinkle needed emergency medical treatment.

45.    In fact, portable defibrillator is designed such that a person with no medical training can operate it in an emergency situation.

46.    Defendants were on notice that the AED was not working but did noting about it.

47.    As a direct and proximate cause of the failure and refusal of the defendants to have functional and operating emergency equipment on site at the jail, Hinkle could not be treated within life or death moments after being tased when a portable defibrillator is designed for use.

48.    All defendants were jointly and severally the proximate cause of Hinkle's pain and suffering and eventual death.

After the incident, the Hale ordered the Alabama Bureau of Investigation be contacted to 'assist" the sheriff department in investigating Hinkle's death.

49.    But just prior to the investigating officer's arrival on the crime scene only minutes after the incident, Hale and members of his supervisory staff ordered that his staff clean up the crime scene where Hinkle had been tased.

50.    The photographs taken by the state investigator of the crime scene were taken after the crime scene was cleaned up by the sheriff's staff, and show the entire area where the incident took place and the area that is not seen on video surveillance

50.    Video could not be provided to the state investigator due to "technical problems" and when it was provided several days later consisted of only bits, pieces, and snippets of the incident scene, and not the entire incident or area where the incident took place.

51.    Jefferson County Evidence Technician STEVE COCKRELL downloaded the jail video and gave Jefferson County Lieutenant JACOB REACH the footage on a DVD, who gave a copy of it to the state investigator.

53.    The actions of Jefferson County, Hale, Cotten and Dukuzumurerymi and Advanced Correctional Healthcare personnel indicate systemic breaches of fundamental standards of correctional management and correctional health care.

54. These breaches are indicative of inadequate policies and practices and inadequate training and supervision.

55.    Once Hinkle was observed going through withdrawal symtoms, having delusions, talking nonsense, and becoming suicidal, there should have been a protocol followed to provide Hinkle immediate emergency medical care and treatment. The fact that there wasn't and he wasn't provided said care and treatment falls far below the standard of correctional health care.

56.    Once Hinkle became unresponsive, he should have been treated with a portable defibrillator or AED by the jail or medical staff.  That he wasn't due to a non-functioning AED falls far below the standard of correctional health care.

57.    Because Hinkle was not appropriately treated but instead tased, he experienced unnecessary pain and suffering and died.

58.    All of the individual defendants identified above acted with malice and/or with reckless disregard for Hinkle's constitutional rights.

59.    Hinkle's serious medical needs were ignored because of the customs or policies of defendants Jefferson, Hale, and Eddings, and of Advanced Correctional Healthcare, the ACH Physician, ACH Administrator, Morgan, Moore, and Lee's deliberate indifference to the serious medical needs of prisoners in Birmingham Jefferson County jail.

60.    With deliberate indifference to the serious medical needs of inmates, defendants Jefferson County, Hale, Eddings, and Advanced Correctional Healthcare along with the ACH Physician, ACH Administrator, Morgan, Moore, and Lee failed to develop and implement adequate policies and procedures for the handling of inmates with serious health conditions, failed to have adequate emergency equipment on hand, and failed to adequately train jail correction officers and medical staff, with the foreseeable result that inmates such as Hinkle would not receive appropriate treatment.

61. More generally, defendants Jefferson County, Hale, Eddings, and Advanced Correctional Healthcare along with the ACH Physician, ACH Administrator, Morgan, Moore, and Lee have established deliberately-indifferent customs or policies concerning inmate medical care, including but not limited to a custom or policy using tasers on inmates with serious

medical illnesses, failing to train jail correction officers and medical staff to deal with serious medical conditions such those presented by Hinkle, a failing to adequately maintain emergency medical equipment like the portable defibrillators, delaying or denying necessary medical treatment to avoid liability for inmate medical bills.

62. Defendants Jefferson County, Hale, Eddings and Advanced Correctional Healthcare were also part of an explicit or implicit agreement or plan to delay or deny necessary medical care to avoid having to pay for medical care for the inmate. This plan included a custom or policy of delaying or denying necessary medical treatment by outside providers by first having the sheriff approve of said treatment or placing the provision of said treatment within the discretion of the sheriff and by placing all of ACH's operations withing the framework of the sheriff's policys and procedures.   Defendants were aware this policy created a substantial risk of serious harm and inflicted unnecessary pain and suffering on inmates.

63.    A Pacer search indicates that the sheriff has been a defendant in numerous cases involving delay and denial of necessary medical treatment including a class action case filed against the sheriff in 2011.

64.    In 2011, the deliberately-indifferent customs and policies in place at Jefferson County's jail facilities were made the subject of a class action

lawsuit involving deliberate indifference to the serious medical needs of inmates. Mason, et v. Hale, CV 11-TMP-3155-W.

65.     Even after the class action lawsuit, changes were not made, leading to the death of Hinkle on September 13, 2014.

66.     Defendants Jefferson County, Hale, and Advanced Correctional Healthcare have chosen to continue the status quo regarding deficient medical care at the Jefferson County Birmingham jail, relying on Advanced Correctional Healthcare's insurance company to deal with cases and claims.

67.     Defendants Jefferson County, Hale, and Advanced Correctional Healthcare were on notice that the above-described customs or policies regarding medical care for inmates were harmful to the health of inmates and caused them to experience unnecessary pain and suffering due to delay and denial of necessary medical care to avoid medical costs associated with said care.

68.     Defendants had such knowledge from prisoner complaints, communications from corrections officers, from their own observations, from common sense, from other lawsuits, and in other ways, including but not limited to the contractual provision making the sheriff the gatekeeper of the provision of said medical services in many cases to inmates with serious

medical needs as opposed to Advanced Correctional Healthcare being the decision maker in such cases.

69.    To a large extent, these constitutionally-deficient policies and practices regarding inmate medical care were created and implemented by the Agreement for Provision of Inmate/Detainee Heath Services, Jefferson County, Alabama, (hereafter referred to as the AGREEMENT) between defendants Jefferson County, Hale, and Advanced Correctional Healthcare, which sets out in plain language that the only beneficiaries to said contract are its signatories, and that it is "not entered into for the benefit of any third person".

70.    In paragraph 5.12 Advanced Correctional Healthcare agrees to provide up to $3 million in insurance, to name the sheriff as additional insured, and in paragraph 5.9 to indemnify the sheriff and employees against any loss or damage including reasonable attorney's fees and other costs of litigation, caused or necessitated by the sole negligence of ACH, its agents, employees, and/or vendors related to the medical treatment or care provided by ACH".

71.    In whole or in part because of paragraphs 5.12 and 5.9  of the AGREEMENT, Jefferson County and Hale and have failed and refused to

address known systemic deficiencies regarding medical care at the

Birmingham Jefferson County jail facility.

72.    In order to control costs, defendant Advanced Correctional

Healthcare, with the knowledge and consent of defendants Jefferson County,

and Hale inadequately staffed the Jefferson County Birmingham jail

facilities, hired sub-standard medical personnel willing to put costs over

inmate health and safety, maintained emergency medical equipment, denied

inmates medications, and delayed or denied medically-necessary referrals to

outside providers, including necessary emergency medical treatment like

that denied Hinkle.

73.    Defendant Jefferson County caused or contributed to the above-

described customs or policies by not providing adequate funds for medical

treatment for the prisoners in its custody, by continuing to retain Advanced

Correctional Healthcare despite knowledge of Advanced Correctional

Healthcare's policies and practices, and in other ways.

74.    All defendants acted jointly and in concert with each other. Each

defendant had the duty and the opportunity to protect Hinkle, to obtain

necessary medical treatment for Hinkle in a timely manner or to establish

policies and procedures and implement training regarding such treatment,

but each defendant failed and refused to perform such duty, thereby

proximately causing Hinkle's pain and suffering, injuries, and ultimately his death.

75.    All defendants, acting under color of state law, inflicted or caused to be inflicted cruel and unusual punishment upon Hinkle in violation of the Fourteenth Amendment to the United States Constitution.

76.    All defendants acted with deliberate indifference.

77.    All defendants acted with intent to violate Hinkle's constitutional rights or with reckless disregard for those rights, justifying punitive damages against the individual defendants and Advanced Correctional Healthcare.

78.    As a result of the conduct of all defendants, Hinkle was caused to suffer physical and injuries and ultimately death.

**Count I - 42 U.S.C. § 1983 -**
**Deliberate Indifference to Serious Medical Needs**

79.    Plaintiff incorporates all preceding paragraphs as if fully set out herein.

80.    Defendants Jefferson County, Hale, Cotten, Dukuzumuremyi, Advanced Correctional Healthcare, Moore, Morgan, acting under color of state law within the meaning prescribed by 42 U.S.C. § 1983, were deliberately indifferent to Hinkle's serious medical needs, which required, among other things, referral to an acute care facility or emergency room, yet did not take appropriate action. These defendants, despite knowledge of

Hinkle's serious medical needs, did not take appropriate action, and did thereby deprive Hinkle of his rights as a pretrial detainee under the Fourteenth Amendment to the Constitution of the United States in violation of 42 U.S.C. § 1983.

81.    Defendants Jefferson County, Hale, Cotten, Dukuzumuremyi, and Advanced Correctional Healthcare, Moore, and Morgan are responsible for the unconstitutional customs and policies described above. The injuries suffered by Hinkle were a direct and foreseeable result of these customs and policies. These defendants did thereby deprive Hinkle of his rights as a pretrial detainee under the Fourteenth Amendment to the Constitution of the United States in violation of 42 U.S.C. § 1983.

## Count II - Negligence / Wantonness

82.    Plaintiff incorporates all preceding paragraphs as if fully set out herein.

83.    Defendants Moore and Morgan owed a duty to Hinkle to meet the standard of care applicable to inmates and/or to make sure those under their supervision were trained adequately regarding the proper care of such inmates, and the proper maintenance of emergency equipment, and that adequate policies and procedures and/or protocol regarding the proper care of such inmates were in place in time of emergencies. This standard of care

required, among other things, appropriate maintenance of emergency medical equipment, appropriate protocols and monitoring of Hinkle's serious mental and physical medical conditions, and referral of Hinkle for emergency medical treatment when he became delusional and suicidal after going into alcohol withdrawal and being deprived of anti-depressant medication. These defendants negligently and/or wantonly violated this standard of care or caused it to be violated with the foreseeable result that Hinkle suffered unnecessary pain and suffering and died.

84.     Because Advanced Correctional Healthcare personnel were acting within the scope of their employment, defendant Advanced Correctional Healthcare is liable for their negligence and/or wantonness under respondeat superior.

## Count III – Excessive Force

85.     Plaintiff incorporates all preceding paragraphs as if fully set out herein.

86.     Defendants Cotten and Dukuzumuremyi use of unreasonable force against Hinkle when they tased Hinkle about the body without reason and justification since he had not threatened harm either to either Cotten or Dukuzumuremyi.

87.    Defendants Cotten and Dukuzumuremyi's use of excessive and unreasonable use of force, proximately caused Hinkle's violations to Hinkle's clearly established 4th and 14th Amendment rights under the Constitution and ultimately his death as described above.

88.    Defendants Cotten and Dukuzumuremyi were acting under color of state law.

## Count IV – ADA and Rehabilitation Act Claim

89.    Plaintiff incorporates all preceding paragraphs as if fully set out herein.

90.    On said date Plaintiff's decedent was experiencing alcohol withdrawal, delusions, not making sense, and became suicidal, and otherwise disabled, and qualified to receive emergency medical care from the defendants Jefferson Count, Hale, Cotten, and Dukuzumuremyi, but was discriminated against receiving said care and treatment solely on the basis of his disability.

91.    Defendants Jefferson County and Hale, failed to properly train their jailers to have peaceful encounters with mentally and physically disabled persons and failed to establish a proper policy for handling such encounters and created a culture where their jailers felt comfortable deploying and using their tasers against Hinkle.

## Count V – Wrongful Death

92.     Plaintiff incorporates all preceding paragraphs as if fully set out herein.

93.     The named defendants, separately and severally, owed a duty to Plaintiff's decedent to provide him with a standard of medical care of the degree of diligence and skill common in the community and applicable to inmates such as Hinkle experiencing the effects of alcohol withdrawal, delusions, chronic hypertension, depression, and/or to make sure those under their supervision were trained adequately regarding the proper care of such patients and that adequate medical protocol regarding the proper care of such patients was in place.  This standard of care required, among other things, Plaintiff's decedent's condition to be closely monitored under physician supervision and referral of Plaintiff's decedent for emergency medical or other appropriate treatment, including having proper and functional emergency medical equipment on hand once his condition deteriorated, Defendants negligently and/or wantonly violated this standard of care or caused it to be violated with the foreseeable result that Plaintiff's decedent's suffered unnecessary pain and suffering, and ultimately died.

## Count VI – Violation of Alabama Medical Liability Act
## Negligent Care and Treatment - Punitive Damages

94.    Plaintiff incorporates all preceding paragraphs as if fully set out herein.

95.    By accepting Plaintiff's decedent as an inmate/detainee in the Birmingham Jefferson County jail, the named defendants, separately and severally, undertook a duty to provide an adequate standard of medical care and treatment for all of his medical needs.

96.    The named and unnamed defendants themselves, and/or by and through their agents, servants, contractors, and/or employees breached their duty to care, treat, and monitor Plaintiff's decedent, and/or supervise and maintain medical staff and their equipment, and administer the appropriate standard of medical care and treatment to Plaintiff's decedent in the above described particulars to the point that Plaintiff's decedent's medical condition deteriorated and he died.

97.    By negligently failing to adequately and competently care for and treat Plaintiff's decedent as set forth in the preceding paragraphs, the named defendants themselves, separately and severally, and/or by and through their agents, servants, contractors, and/or employees deviated from the standard of care that would be exercised by those charged with attending to the medical needs of patients similar to Plaintiff's decedent within the medical community possessing and exercising ordinary and reasonable knowledge

and skills, and violated common laws, statutes, regulations, and

certifications.

98.    As a legal and proximate result of the named defendants themselves

and/or by and through the defendants agents, servants, contractors, and/or

employees' negligent care under the Alabama Medical Liability Act

described above, Plaintiff's decedent was caused much pain and suffering,

and eventual death.

### Count VII – Supervisory Liability

99.    Plaintiff incorporates all preceding paragraphs as if fully set out

herein.

100.   At the time of the incident made the basis of suit, there was a wide spread

problem where the inmates in the county jail were not receiving medical treatment

for serious medical needs. First, if you find that a defendant in a supervisory position

has participated directly in the conduct that injured the plaintiff, or directed the

subordinate to do the acts in question, you should find that the supervisor caused the

injury.

100.   Defendants Hale and Eddings caused the death of Hinkle by their

deliberate indifference to their duty, and by directing their subordinates to use

tasers on inmates who had serious medical need such as Hinkle, and that they

were deliberately indifferent to the probability that their dereliction of duty to

inmates with serious medical needs would cause a deprivation of Plaintiff's decedent's federally protected rights.

101.   Defendants knew that there was a high likelihood their subordinates would violate the federally protected rights of others, yet failed to take reasonable steps to prevent its occurrence.

## Count VIII – Declaratory Judgment

102.   Plaintiff incorporates all preceding paragraphs as if fully set out herein.

103.   Because the AGREEMENT attached hereto does not benefit anyone other than Defendants Jefferson County, Mike Hale, and Advanced Correctional Healthcare, Inc., and specifically excludes "others who might otherwise be deemed  to constitute third party beneficiaries thereof" such as inmates and detainees.

104.   Because the AGREEMENT does not benefit any "others who might otherwise be deemed to constitute third party beneficiaries thereof" such as inmates and detainees. said AGREEMENT it is nothing more than a sham by, between, and among the signatories therein, and the defendants herein, and should be declared null and void by this Court.

## Count IX – Spoliation

105.   Plaintiff incorporates all preceding paragraphs as if fully set out herein.

106.   Hale had a duty to preserve the crime scene where Hinkle died at the hands his deputies.

107.   Hale and his staff breached said duty to preserve said scene by cleaning up all of the evidence of the scene prior to the arrival of the state investigator.

108.   Hale had a duty to preserve the jail video of the incident but failed to preserve the complete jail video showing the incident where Hinkle was tased.

109.   As a proximate result of said lost or destroyed evidence, Plaintiff's efforts to investigate the Hinkle's death have been severely hampered and the underlying action may not survive as a result of the lost or destruction of said evidence.

## Other Matters

110.   All conditions precedent to the bringing of this suit have occurred.

## Relief Sought

111.   Plaintiff seeks the following relief:

a.    That he be awarded appropriate declaratory and injunctive relief;

b.    That he be awarded such compensatory damages as a jury shall determine from the evidence he is entitled to recover;

c.    That he be awarded against the individual defendants and Advanced Correctional Healthcare such punitive damages as a jury shall determine from the evidence he is entitled to recover;

d.    That he be awarded prejudgment and post-judgment interest at the highest rates allowed by law;

e.    That he be awarded the costs of this action, his reasonable attorney's fees, and his reasonable expert witness fees; and

f.    That he be awarded such other and further relief to which he is justly entitled.

**Dated:  September 13, 2016**

*/s/ Anthony Piazza*
Anthony Piazza (PIA001)
Personal Representative
of the Estate of Ricky DeAngelo
Hinkle, Deceased,

**Of Counsel:**
ANTHONY PIAZZA, P.C.
Post Office Box 550217
Birmingham, Alabama 35255-0217

**SERVE DEFENDANTS AS FOLLOWS:**

Jefferson County, Alabama
c/o Clerk, Jefferson County Commission
716 Richard Arrington Jr. Blvd. N.
Birmingham, AL 35203

Mike Hale
2200 Rev. Abraham Woods Jr. Blvd.
Birmingham, Alabama 35203

Ron Eddings
809 Richard Arrington Jr. Blvd. N.
Birmingham, Alabama 35203

Christopher Cotten
809 Richard Arrington Jr. Blvd. N.
Birmingham, Alabama 35203

Habimana Dukuzumuremyi
809 Richard Arrington Jr. Blvd. N.
Birmingham, Alabama 35203

Roy Bristow
809 Richard Arrington Jr. Blvd. N.
Birmingham, Alabama 35203

Steve Cockrell
809 Richard Arrington Jr. Blvd. N.
Birmingham, Alabama 35203

Jacob Leach
809 Richard Arrington Jr. Blvd. N.
Birmingham, Alabama 35203

Advanced Correctional Heathcare, Inc.
c/o C. T. Corporate System, its Registered Agent
2 North Jackson Street, Suite 605

Montgomery, AL 36104

ACH Physician
809 Richard Arrington Jr. Blvd. N.
Birmingham, Alabama 35203

ACH Administrator
809 Richard Arrington Jr. Blvd. N.
Birmingham, Alabama 35203

J.  Moore
809 Richard Arrington Jr. Blvd. N.
Birmingham, Alabama 35203

T. Cole
1822 2nd Avenue N.
Bessemer, Alabama 35020

Jill Morgan
809 Richard Arrington Jr. Blvd. N.
Birmingham, Alabama 35203